# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

6620 Blair Road Northwest
Washington, D.C.

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER:

TO:  Special Agent Joshua C. Green, being duly sworn depose and say:

I am a Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives and have reason to believe that on the premises known as (name, description and or location)

6620 BLAIR ROAD NORTHWEST, WASHINGTON, D.C. (The location is described as a two story red brick duplex residence located on the west side of Blair Road Northwest, south of Whittier Street and north of Van Buren Street.  Directly to the left and attached to the residence is the residence that is marked "6618".  The front door to the residence located at 6620 Blair Road Northwest is white in color with glass at the top of the door. On the right side of the front door is a gold colored door knob. The numbers "6620" are dark in color, located to the right of the front door on a white background.  There is a gray colored fence that surrounds the residence.)

in the District of Columbia, there is now concealed certain property, namely (describe the person or property)

marijuana, illegal drug packaging material and paraphernalia, records, receipts, bank books and statements, notes and ledgers, address books, contact telephone numbers and names, cellular phones and/or digital paging devices, documents related to the ownership, occupancy and/or control of the premises, illegal weapons, U.S. Currency and/or other proceeds of narcotic sales.

Which are (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
Evidence and instrumentalities of alleged crime(s): In violation of Title 21, United States Code, Section 841(a)(1).
The facts to support the issuance of a Search Warrant are as follows:

See Affidavit which is incorporated herein for reference, continued on the attached sheet and made a part hereof.

_____
Joshua C. Green, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives
(Affiant)

Sworn to before me, and subscribed in my presence
_____ at Washington, D.C.
Date and Time Issued

_____
 United States Magistrate Judge
Signature of Judicial Officer

**BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES**
**WASHINGTON, D.C.**

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR:**

**6620 BLAIR ROAD NORTHWEST**
**WASHINGTON, D.C.**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR 6620 BLAIR ROAD NORTHWEST, WASHINGTON, D.C. This location is described as a two story red brick duplex residence located on the west side of Blair Road Northwest, south of Whittier Street and north of Van Buren Street. Directly to the left and attached to the residence is the residence that is marked "6618". The front door to the residence located at 6620 Blair Road Northwest is white in color with glass at the top of the door. On the right side of the front door is a gold colored door knob. The numbers "6620" are dark in color, located to the right of the front door on a white background. There is a gray colored fence that surrounds the residence.

Your affiant, Joshua C. Green, being duly sworn, does depose and state that:

1. Your affiant in this matter is Special Agent Joshua C. Green of the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF). I am currently assigned to the Washington, D.C. area High Intensity Drug Trafficking Area (HIDTA) Task Force and I have been assigned to the HIDTA Task Force since becoming a Special Agent with the ATF in July of 2000. Prior to becoming an ATF Special Agent, I was a Special Agent with the former Immigration and Naturalization Service for over five years, the last three of which were in the Washington, D.C. area. Since becoming a Special Agent with the ATF, I have taken part in numerous narcotics and firearms related investigations involving armed drug traffickers, armed gangs, felons in possession of firearms and ammunition, firearms trafficking, and the use of firearms in furtherance of illegal drug trafficking. In addition, I have attended training related to narcotics and firearms at the Federal Law Enforcement Training Center in Glynco, Georgia and have received additional criminal investigation training, particularly related to illegal drug trafficking, offered by HIDTA.

2. I have participated in the execution of over one hundred and fifty search warrants in the

Washington, D.C. metropolitan area, which have resulted in the recovery of firearms and ammunition, illegal drugs and suspected drug packaging material, and suspected drug paraphernalia, including, but not limited to, electronic digital scales, cooking equipment, various chemical additives associated with illegal drug production, and other items for drug usage. In addition, these warrants have also led to the recovery of such items as shell casings, magazines, holsters, gun cases and safes, photographs of individuals with narcotics and firearms, large amounts of U.S. currency, records and documents associated with drug trafficking, and documentary evidence indicative of ownership and/or control of a premises and/or vehicle.

3. During the course of your affiant's training and professional experience in the area of law enforcement, I have become familiar with narcotics and illegal drug-related crime in the Washington, D.C. metropolitan area and with the methods used to manufacture, package and to distribute controlled substances, including marijuana. This knowledge has in part been the result of being present during dozens of interviews of defendants, witnesses, confidential informants, police officers and other law enforcement officers. In addition to my participation in numerous search warrants as described above, I have also participated in the arrest of dozens of individuals in the Washington, D.C. metropolitan area for narcotics-related offenses. Based on this training and experience, I have learned that:

   A) It is common for narcotic traffickers to secrete narcotics in secure locations within residences, vehicles, businesses and other locations over which they maintain dominion and control, for ready access, and to conceal these items from law enforcement authorities. In addition, items and paraphernalia used to process or package illegal narcotics are often stored along with such secreted narcotics.

   B) It is common for individuals who sell narcotics to maintain in their residence large amounts of U.S. currency in order to maintain and finance their ongoing narcotic business. Other contraband proceeds of narcotics sales, such as jewelry and other valuables, may be stored in the residence along with currency. Additionally, your affiant knows that these same individuals keep receipts, bank statements, money drafts, letters of credit, money orders and cashier checks, bank checks, currency counting machines and other items related to the obtaining, secreting, transfer, or concealment of assets in the form of U.S. currency and other financial instruments.

   C) It is common for records of narcotic transactions and papers relating to the accumulation and disposition of assets (such as, but not limited to, books, ledgers, bank books and statements, and notes or logs) derived from narcotic trafficking to be stored by narcotic distributors in residences. In addition, it is common for papers and documents related to the ownership, occupancy and/or control of the premises to be stored within the premises.

    D) It is common for people who sell illegal drugs to maintain addresses, telephone books, electronic paging devices, cellular telephones and other papers reflecting names, addresses, and/or telephone numbers of associates and co-conspirators. These items are frequently kept at the same location as the controlled substances.

    E) Participants in drug trafficking and other violent criminal activity often possess and maintain weapons and ammunition. Weapons are often stored in the subject's residences for their protection and for the protection of their illegal narcotics and the assets generated from the sales of the illegal narcotics. Firearms are generally kept in secure locations to protect the items from theft and discovery by law enforcement authorities, thus reducing their exposure to criminal liability. In your affiant's experience, the recovery of weapons during the execution of search warrants is usually accompanied by the recovery of additional ammunition, magazines, bulletproof vests and documentary evidence indicative of ownership and possession of firearms.

4. As this affidavit is being prepared for the limited purpose of obtaining a search warrant for the premises noted, it is not intended to include each and every fact observed by your affiant, other law enforcement officers, or known to the government. This affidavit is submitted with only those facts necessary to support probable cause for this application.

## SUMMARY OF INVESTIGATION

5. Over the last four years members of Washington, D.C. ATF-HIDTA Task Force have worked with a Confidential Informant, referred to in this affidavit as CI-1. CI-1 has participated in a number of controlled narcotics and firearms purchases and has provided reliable information regarding firearms, narcotics trafficking and other violent criminal activity to ATF and other law enforcement agencies. This information has led to the execution of numerous search warrants and the recovery of a large amount of illegal narcotics, firearms, ammunition, U.S. currency and other contraband. Further, the information that the CI has provided has been verified accurate by your affiant and other members of the ATF/HIDTA Task Force. No information provided by this source has ever been proven incorrect or misleading.

6. In May, 2006, CI-1 met with your affiant in reference to a subject known to CI-1 as a trafficker in marijuana. CI-1 stated that it knew this subject to sell marijuana in the Washington, D.C, metropolitan area. CI-1 described the subject as a black male, approximately five feet eleven inches tall, with a slim build and short dark hair. The subject spoke with a slight accent and CI-1 believed he was from Jamaica. CI-1 stated that the subject lived near the Takoma Park Metro Station in Northwest, Washington, D.C. and drove a green Ford Mustang bearing D.C. tags CG4269.

7. Research was conducted by your affiant and it was determined that the Ford Mustang was registered to Renwick ADAMS at 6620 Blair Road Northwest, Washington, D.C. This location is approximately four blocks south of the Takoma Park Metro Station in Northwest, Washington, D.C. NCIC records indicate that ADAMS was arrested in Prince George's County, Maryland in April, 2001, and charged with Theft and Malicious Destruction of Property. These records describe ADAMS as a black male, five feet ten inches in height, weighing 135 pounds, a close match to the description provided by CI-1. Your affiant also checked the records maintained by the Bureau of Immigration and Customs Enforcement and found that ADAMS is a national of Guyana, which might explain his accent reported by CI-1.

8. During July and August, 2006, CI-1 witnessed ADAMS on several occasions delivering suspected marijuana to another seller in the Washington, DC, metropolitan area. During those occasions, ADAMS drove the Ford Mustang bearing D.C. tags CG4269.

9. During May, July, and August, 2006, your affiant and other law enforcement officers went to the area of 6620 Blair Road, Northwest, Washington, D.C. and observed the green Ford Mustang, bearing DC tags CG4269 parked in front of or near the residence located at 6620 Blair Road, Northwest, Washington, D.C

10. In or around August, 2006, ATF Special Agent Andrew Vasaka went to the residence located at 6620 Blair Road, NW, Washington, D.C. At this time, the green Ford Mustang, bearing DC tags CG4269, was parked in the front of the residence. SA Vasaka approached the residence and spoke with an unidentified black male that was inside of the residence. This subject claimed he was not ADAMS, but would not provide his name or other identifying information. SA Vasaka stated that while he was talking with this unidentified individual, he could smell the strong odor of unburned marijuana emanating from the residence. SA Vasaka has been a special agent with ATF for the past five years and prior to that was a police officer for the New York City Police Department. SA Vasaka stated that through his experience in drug cases and his training that he was sure that the odor emanating from the residence located at 6620 Blair Road, Northwest, Washington, D.C. was marijuana.

11. Based on the investigation that had been conducted up until August, 2006, ATF Special Agent Frank Oliver applied to the United States District Court for the District of Columbia for a search warrant for the residence. A search warrant was issued allowing agents to enter and search the premises for marijuana, drug packaging material and paraphernalia, documents, and other related items. However, this search warrant was not executed as Agent Oliver was unable to establish that ADAMS was in the residence at the time(s) he intended to execute the search warrant. As such, Agent Oliver used his discretion and decided to not execute the search warrant until he was more confident that

ADAMS was present in the target residence.  The search warrant subsequently expired without being executed.

12. During early December, 2006, CI-1 observed ADAMS engage in a drug transaction involving the sale of marijuana.  At that time ADAMS was seen driving the Ford Mustang bearing D.C. tags CG4269.

13. On January 23, 2007, your affiant and ATF Special Agent Jeffrey Meixner went to the residence located at 6620 Blair Road, NW, Washington, D.C. At this time, the green Ford Mustang, bearing DC tags CG4269, was parked in the front of the residence.  When the agents knocked on the door of the residence, an unidentified male looked out the first floor window.  Through a small opening in the curtain of this window, Agent Meixner observed approximately three individuals in the first floor living room/dining room area.  Approximately thirty seconds later the door was opened by another individual (different from the subject who looked out the window), who stepped outside the residence, immediately closing the front door behind him.  Agent Meixner could smell the strong odor of marijuana on his person.  This individual identified himself as Renwick ADAMS.  We identified ourselves as employees of the Department of Justice and after a brief conversation on matters unrelated to illegal drugs or illegal drug trafficking, your affiant asked if we could speak with ADAMS further inside the residence.  ADAMS agreed and went back into the residence, closing the front door behind him again.  While your affiant and Agent Meixner waited outside, Agent Meixner again observed through a small opening in the first floor curtain three subjects moving about in the first floor living room/dining room area.  After approximately thirty to forty seconds, ADAMS opened the door again and admitted your affiant and Agent Meixner.  We entered the first floor of the residence and stayed near the front door.  Both your affiant and Agent Meixner smelled a strong odor of air freshener or deodorizer which seemed to mask a scent of marijuana.  None of the individuals observed earlier were present in the first floor living room/dining room area.  ADAMS located his U.S. Naturalization Certificate and voluntarily presented it to your affiant thereby confirming his identity.  When ADAMS handed me this certificate, his hand was visibly shaking, which, based upon my training and experience, may be a sign of excessive nervousness.  In addition, ADAMS' eyes appeared bloodshot, again a sign which based upon my training and experience of possible recent use of illegal drugs.  We briefly engaged ADAMS in conversation and soon after thanked ADAMS for his time and left the residence.

14. In summary, based on the information contained herein, your affiant believes that Renwick ADAMS and/or other subjects are utilizing 6620 Blair Road Northwest, Washington, D.C., as a base to conduct and facilitate an illegal drug operation involving marijuana and has done so on a continuous basis for at least the past six months.  Furthermore, based on the aforementioned investigation, your affiant's training, personal observations and experience, your affiant has probable cause to believe that this

residence contains evidence, instrumentalities and fruits of the offense of Distribution of Marijuana, in violation of Title 21, United States Code, Section 841(a)(1).  Your affiant believes that probable cause exists that within 6620 Blair Road Northwest, Washington, D.C. there is presently concealed marijuana, illegal drug packaging material and paraphernalia, records, receipts, bank books and statements, notes and ledgers, address books, contact telephone numbers and names, cellular phones and/or digital paging devices, documents related to the ownership, occupancy and/or control of the premises, illegal weapons, U.S. Currency and/or other proceeds of narcotic sales.  I therefore respectfully request a search warrant be issued for the premises, curtilage, and locked boxes within the premises and curtilage, of 6620 Blair Road Northwest, Washington, D.C., authorizing the seizure of the aforementioned items and any additional contraband discovered within.

_____
Joshua C. Green
Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives


Sworn to and subscribed before me this _____ day of January, 2007.



_____
United States Magistrate Judge
District of Columbia